The Honorable the judges of the United States Court of Appeals for the Fourth Circuit. Oh yay, oh yay, oh yay. All persons having any manner or form of business before the Honorable the United States Court of Appeals for the Fourth Circuit are admonished to give their attention for the court is now sitting. God save the United States and this Honorable Court. All right, good morning. We'll begin with, but have we changed the order here? Oh no. Okay, we'll begin with the case United States v. Abed and Ms. Lee will hear from you first. Good morning, Your Honor. Christine Lee on behalf of Amar Abed. With the court's permission, I'm going to direct my comments, my argument today towards the, what I consider to be the most important issue, which is the district court's refusal or failure to grant or even address Mr. Abed's request for a downward departure based on his military history and his documented psychiatric issues. Amar Abed came back from the war in the early 90s a very damaged person. He went to the Middle East to represent our country and he did so honorably and he did so in many ways that were uniquely within his skill set as an Arab American and in part because of that, but also just because of how awful war is, he came back with massive massive psychological injuries and those injuries are absolutely clear in the record, in the testimony of Dr. Pittman and throughout all of his VA medical records which I've provided to the court. Now, interestingly, he came back to Virginia and he committed a number of crimes with one exception, we do not quibble with the government's account nor could we quibble with the government's account of Mr. Abed's offenses with one exception. However, those crimes occurred within a basically a two to four year period immediately following his service in the military and as Judge Urbanski pointed out during the sentencing hearing, even while all of these chaotic violent events were occurring, Mr. Abed was repeatedly going to the VA, to the veterans hospital to seek help because he felt that he was losing control. But 25 years ago, the medicine and the medical and the scholarship was not such as it is today where there's much greater understanding of post-traumatic stress disorder than there was then. They just called it Gulf War Syndrome and they primarily addressed it with medication which in many cases made the person feel that they were in a fugue state. So he comes back, he commits a number of offenses. Clearly, there was drug dealing, there was all the shenanigans at the Pizza King and Holly's Bar, there were brawls, there were fights, there were robberies, all involving drug other drug dealers and drug users. And then he was arrested and he was faced with a sentence that was that it was determined by two things. Mandatory guidelines at the time and mandatory consecutive 30-year sentence. So in fact, Judge Wilson who sentenced him in 1997 had very limited window to work in. He had the guideline range that was properly calculated at the time to be 188 to 235 months and he was required to impose a consecutive sentence of 30 years consecutive to any other sentence. Judge Wilson, hearing the evidence, did not impose the top of the guidelines for Mr. Abed. He imposed a middle of the guideline sentence for all of the non, I'll call them non-924c offenses. He imposed a sentence of 210 months. What's important for the court to know and I don't believe Judge Rapansky ever even acknowledged this, is that at the time that Mr. Abed was sentenced in 1997, military service and psychological impairment was expressly disfavored as a consideration, as a relevant consideration in Chapter 5. Literally, the guidelines said military service is not ordinarily relevant. Psychiatric disorders are not ordinarily relevant in determining the guidelines. Consistent with that, Mr. Abed's attorney at the time did not, I mean she mentioned his military record, but she specifically said on the record we are not arguing that as a basis to give a lower sentence. That was what she did at the time and it was consistent with the guidelines. Between then and now, the guidelines change. The guidelines now expressly, you know, consistent with common sense and again scholarship and science, expressly state that it is relevant, that it may be relevant, that it should be considered. And in this case, and it's mentioned in Chapter 5 of the guidelines, Chapter 5 of the guidelines is a section of the guidelines devoted to departures, departures. On that basis, Mr. Abed requested a downward departure based on his extraordinary military service. Counsel, it's Judge Harris, can you, I may have misunderstood something about the record. There was an express request for a downward departure at the second sentencing. It looked to me like the original sentencing memorandum asked for a within guidelines sentence, so was there a separate motion made later? Actually, that's an interesting question. At departure, clearly counsel cited the departure grounds in Chapter 5. Those are departure, Chapter 5 is departure, 5H. So those are cited in the sentencing memorandum, but what counsel was seeking to have the court do is because counsel was throughout the proceedings conceding that Mr. Abed had a higher offense role than his co-defendants. He was more culpable in the criminal activity than his co-defendants. I was seeking to have Judge Urbanski determine what sentence would correlate, and this is what he should have done under the law, correlate to that higher culpability and then depart back down to a guideline sentence. And I, that request. That's not a departure. That's just a, that's just to take them out of the range relative to the others. A departure would have to be below a guidelines by definition and there was no discussion of departure anyway by the judge and no real argument about it. It was really, the question was a variance. He relied on a variance, but the discussion was over 30 pages long and there were questions and answers and I thought where the judge was coming out was focusing on the conduct and the conduct, of course, he reviewed back in 1998, the same conduct and, and he reviewed that and he looked at what he, the others got 30 years. Mr. Abed suggested 312 months, not 30 years, 30, 300, 300 months and Abed suggested 312 months and the judge imposed 360 months, which was an upward variance, but I'm not sure we get, it benefits our analysis to be looking at whether there was a departure requested in 1998 or whether departure was requested here. In both places, they were not, they were not considered for differing reasons. Judge Wilson said, I don't need a departure because the government was asking for 595 months and I think 570 months is right and I can do that with the existing, existing circumstances. Judge Urbanski didn't consider departure because he, he basically thought the variance in relation to the others and in relation to the conduct justified 360 months, which is an upward level of four levels, I think, on the guideline chart, but if I may, your honor, it's better, I think, to keep the, keep the criteria we're considering consistent with what was actually considered instead of getting into this departure business. The court has actually pointed to what is really at the crux of the problem of what Judge Urbanski did in this case. Judge Urbanski did not, he considered this sentencing, which he called, he used the word plenary resentencing, he used that more than once. Well, that's what it is, under PEPRA. That's what it should have been. He did not actually conduct a plenary resentencing. He conducted, and to be fair to him, this was in February 2020, right in the midst of a number of First Step Act hearings that he decides, under 3582B or C, whether to reduce the sentence from what it is, and through the proceedings, he, and with the invitation of the government, talks about this sentence as a reduction, and he specifically says the defense is arguing for a reduction. We weren't arguing for a reduction because 570 months was not a relevant guideline. Under Gall and under Rita, the district court has an obligation. Yeah, but we're not talking about that, when it's a plenary, the judge was basically historically noting that he had 570 months and he's now getting 360 for the same conduct. Actually, and the, as you know, the guidelines are conduct oriented, and the instruction in the guidelines is to come up with a single, a single offense level, and not to focus partition on the various, various charged offenses. That's shown in 3D and in 1B of the guidelines. So, the initial sentence was 570 months for the same conduct. This one is 360 months for the same conduct. Now, the, obviously you have to take into account the charged offenses and, but he still used a Molotov cocktail. He just didn't commit a separate crime for doing that now. The problem, I'm sorry, he was convicted of arson for the Molotov cocktail. I understand, but you know. And he specifically got an enhancement for creating danger with that Molotov cocktail. We shouldn't be arguing what the facts are. I mean, we should be arguing what your policy was error, because I think the record's pretty clear as to what happened, and it was a plenary re-sentencing. I agree that it was supposed to be. I disagree that it was, and the reason I says in initial sentencing or in a plenary re-sentencing, the first step is to calculate the guidelines correctly and to use them. And that's exactly what he did at the beginning of his sentencing. He said, I've calculated the guidelines, this is where I am, and he used the 3553 criteria and announced that too, and was applying that, and was, and said he was going to create a variance based on the guidelines of 188 to 235. He never mentioned that again, not once. Not once did he mention the guideline range again. Every subsequent reference to a specific time was 570 to 595. Well, he was trying to explain why he was doing a variance. It's not a... He ordered structurally, you just can't discount what he said. I mean, he said clearly, I'm creating a variance sentence. He created the guidelines correctly, he found the guideline range correctly, that's 188 to 235, and the only error he made was with respect to one count, he imposed 210 concurrent months, and later he corrected that right at the very end of the sentencing. But he did exactly that. It seems to me your argument has to focus on something other than the fact he didn't consider the 3553 factors, or he didn't begin with the guidelines. He did not consider, he used the bench, as a benchmark, as a starting benchmark, the sentence that was imposed in 1997. That sentence, in fact, is utterly irrelevant to his task today. He specifically, in making his remarks about the sentence, states, I am not, this is why I'm not going to impose 570. He never says why he's not going to impose 235. Now, he does say, quote, there was a lot of crime. Yes, Your Honor. Sorry, Counsel, it's Judge Harris. So, I know the and there is a lot of reference to 570 as sort of a benchmark, but the government is asking for 570, or something like 570, so isn't it fair for the District Court, I mean, you can understand it as the District Court just explaining why he's not going along with the government's request. Well, I asked for 312, but he didn't go along with that request or mention it at all, either. But, with respect to the government's request, I very much want to make the if Erbanski didn't, Judge Erbanski did not identify the reasons why he deserved 10 years more than the next person that, by such a sentence, would be supported. But, in fact, if the court looks closely at the pre-sentence report, every last bit of conduct is accounted for. There's no conduct that's not accounted for in the guideline, including the two-level enhancement for creating a danger. Yes, Your Honor. Ms. Lee, I didn't mean to interrupt you there. You go ahead and finish if you'd like to, but if you would tell us how Ventura plays into your analysis, because I think that's a big part of the issue that we have to consider today, isn't it? Ventura is a guideline case. The appellant in Ventura did not like where in the guidelines the sentence came out. The court does not have to explain with the same comprehensiveness and within guideline sentence and an outside of guideline sentence. This court has been clear that when varying upwards, the court must state specific reasons why the range is inadequate and how he got to where he got. Ventura, both before and after the sentences, were within guideline sentences. Right, but I'm talking about the sentencing package doctrine. I'm not saying the sentencing package doctrine does not apply. I am not saying that. I am saying that it does not apply to the extent where, especially where, from this record, a 30-year variance or never have, I don't believe, have been, there's no, there's no legal reason for a 30-year departure. Why have a resentencing at all if the only goal is to recreate the old sentence? You've got to start with the current guideline. How do you get a 30-year departure? There's no departure, number one, it's a variance, but the guidelines was 235 and he went to 360, right? Your Honor, I'm over time, may I answer? Please. I'm saying that if he had reimposed the 5-7 or 5-95, that would be a 30-year departure. But he asked the government clearly, what do you want? And the government said, I want the same sentence, 5-70. Right. At the court, when it announced what it was doing, it said, I'm going to create a variance. I start with the guidelines and, and, and three, five, five, three factors and he started talking about that. And saying those were discussion related to various factors to consider the variance. And he talked about the rehabilitation and he talked about the post-syndrome and he talked about, but he was very impressed also about that this was a very serious crime. He said one of the worst he'd ever seen. The government said the very same thing. And he talked about how the community was terrorized for four years. And so, and he talked about the relevance to the other defendants and Mr. Abed asked for 312 months recognizing that. And he said, I'm giving 360. And he explained why. But he explained why. We're going to consider the sentence. We ought to be considering what the record actually says. And I agree. Okay. May I want to respond to that? Go ahead. He explained why he gave 312 instead of 570. He never, I mean, 360 instead of 570. He never once explained why he gave 360 instead of 312. He didn't even allude to it. Yes, Your Honor. Just a quick question. I know you're over time, but maybe this will help with efficiency. So you just said that you're not saying that the sentencing package doctrine doesn't apply here. And I understand that you sort of started your argument with this sort of procedural reasonableness questions about what happened at sentencing. But a good part of your brief was about how putting to one side whether this sentence was adequately explained, the district court simply didn't have the authority to impose this sentence, period. It violates the due process clause, violates the law of the case, it violates the ex post facto clause. But now you're saying you're not objecting to application of the sentencing package doctrine. So are you continuing to press the argument that the district court lacked the legal authority to impose this sentence? You know, that's a good question. Your Honor, all I can say is I submit on the brief on the ex post facto issue. I do recognize the importance of the sentencing package doctrine to make sentences fair and to effectuate the premise behind judge-controlled sentencing and the 3553A factors. I am saying that to use the sentencing package doctrine to effectively reimpose a sentence that, when I say could not have been imposed back in the 90s, I'm not just talking about because the guidelines were mandatory. But if there had not been a 30-year consecutive mandatory, there's no way the government, on this record, could reach a 30-year upward departure on a Heartland argument or any other argument. So that's what I mean by could not have been imposed. And I'll reserve the balance of my time. Thank you. All right. Thank you. All right. We'll hear from the government. Good morning, Your Honors. You may please the court. My name is Jonathan Jones, and I'm here on behalf of the United States. Your Honors, I'd like to start up with the procedural reasonableness question that counsel spent quite a bit of time discussing. I think just to get right into it, if the question we're looking at is whether the sentence was adequately explained, I think looking at the record here, we can see very clearly what the court was doing and why it was doing it. He started by calculating the guidelines. That's on JA 4809. It's very clear that when he imposes a sentence, he starts by calculating the guidelines. And it's also very clear from the record of sentencing that he is considering all of the mitigating or Chapter 5 evidence that has been submitted by Mr. Abed. He repeatedly refers to the PTSD, refers to military service. He speaks about rehabilitation, and he's impressed with the letters that he's received. And he says very specifically on the record, and we've cited to this in our brief, that he is going to consider those things. And when he's imposing the sentence, when he goes through all of the 3553 factors, he again alludes to these things, the PTSD, the rehabilitation, military service. So it is very clear from the record that he considered all of those arguments, and he took them into account in terms of the sentence that he decided to impose. In addition, it's also very clear why we did not end up with just a guideline sentence. On multiple occasions, he reversed to the severity of the underlying conduct. And we've certainly laid that out in the background section of our brief. And as the court has mentioned, what the PSR found was that Mr. Abed terrorized the community for four years. This is very, very serious underlying conduct. And the court recognized that and referred to that on multiple occasions during the course of the sentence, during the course of imposing the sentence. He also recognized, as has been discussed here today, and I think as was acknowledged at the sentencing, that Mr. Abed was the most culpable of all of these things. And so we have a situation where the court says he's the most culpable. This is extraordinarily severe underlying conduct. I mean, this is really, really terrible underlying conduct. But I'm not going to go as high as the this mitigating evidence that I've heard from the defendant. So what this court has explained district judges need to do for purposes of sentence is address arguments that have been made, and the rationale needs to be clear from the record. I would point specifically to Nance, where this court's decision in Nance, where the court explains that to the extent that it's clear from the record that the court considered and addressed arguments, and it's clear what the rationale is, that the court has adequately satisfied the sentencing paradigm laid out in cases like Gall and Rita. I think that's precisely what we have here. Your Honor? Counsel, do you want to, can you respond directly to your colleague said, and I do see this in the record, and it troubled me to some extent, that although the court does start by laying out the guidelines, you know, it's, we're well into the transcript. It's been a long time by, since then, by the time the government, I'm sorry, the court really starts discussing this mitigating evidence, and it does keep discussing it in terms of this is a reason for me to go down from 570 months. I'm reducing the sentence from 570 months, and it does never say I'm going up from 235 months. It doesn't say that, and so it does seem that when the court does the real analysis, sort of applying fact to law, it has in its mind, I'm veering down, and I do, I mean, do I need to be worried that this sort of myopic focus on 570 as a starting point might have had kind of a weird anchoring effect here, and brought the district court to a different place than it would have ended if it had been focused on 235 and how far up it was going? The short answer, Your Honor, is no. I don't think there's a problem, and we would disagree with the categorization that there was a myopic focus on 570, so the district court pretty clearly calculates the guidelines, and what Nance has said that needs to be clear from the record, from the sentencing record, is sort of the rationale and what the district court is doing, and that means that he does not, there's no magic words requirement. He doesn't have to specifically say anything. It just means, no, no, I guess I'm not suggesting that there's a Nance problem here, a failure to discuss or account for the mitigating evidence. It's just that there are all these cases saying that the guidelines have to be the starting point. You're supposed to look at the guidelines, 188 to 235 months, and then explain why you're going over 235, and when I look at this explanation, I see an incredibly full explanation of why he is going under 570, but less. The loop is never expressly closed that this is why this degree of upward variance is required. So, your honor, I agree that he never specifically says at some point, I am going to vary downward for reason X, and I would submit that he does not actually have Well, he varied upward. That's what I'm saying. He did talk about varying downward, but in fact, he varied upward. Sorry, what I meant to say is that there's nowhere in the record where he specifically says, I'm going to vary upward for reason X, but I think when you look at the entire context, it's clear why he's coming above the guideline range. His repeated references to Mr. Abed being the most culpable and the severity of the conduct, I think, explain why he's coming above the guideline range, and when we look at the statement of reasons that was issued after, that, I think, is a very concise explanation of what happened. He says because of the severity of the underlying conduct, a guideline range sentence was not appropriate. However, given the various mitigating factors that were discussed, the evidence that was given during the sentencing hearing, it was not going to go as high as the government recommended, and I think that pretty easily and pretty clearly reflects what had happened during the sentencing hearing, and so although he doesn't specifically say, I'm going to vary upwards because the sentence is so, because the underlying conduct is so secure, the fact that he speaks multiple times about the severity of the underlying conduct and multiple times says that Mr. Abed is the most culpable, and there's no dispute about that, it's clear why he's coming above, and he feels the need to come above the guidelines that is calculated, but because the government is asking for 570 and making the argument as to why, you know, this conduct is so serious that we need a sentence in the range of 500 months, he says I'm not going to go that high, and I'm going to come down from that, and this is where I'm going to arrive. He specifically talks about on balance, this is the sentence that I think is appropriate, and the fact that he's talking about, Your Honor? Mr. Jones did, to what extent did the judge discuss the military service and the mental health issues the guidelines numbers? Did he ever make that correlation? In other words, talk about those issues that were foremost in the defendant's mind and relate them to the guidelines? Did he ever do that in the transcript? So, what he did in the transcript is he calculated the guidelines, and then he explained that he was considering those factors, that evidence, in terms of the sentence he proposed. So, again, I would point to the court, this is JA 4809, and this is where he first calculates the guidelines, and then in the very next paragraph, he starts out by saying the defense has effectively argued for a reduction based on the defendant's military service and combat service in Iraq. So, he lays out the guidelines, and the very next thing he says is the defense has argued about military service, effectively so, and this is after he's said multiple times that he's going to consider. So, he doesn't specifically say this, the military service specifically impacts this part of my calculation, but what he does say is, I'm calculating the guidelines, they are 188 to 235, and I'm considering these factors in terms of 35538, and the ultimate sentence that I'm going to oppose, and at the end, he says on balance, I'm going to impose this sentence. And when he's referring to a reduction, the defense asks for a reduction, what was he meaning there then, in terms of reduction? Reduction from what? Your Honor, the way that I would read that, so the defense has characterized their arguments in terms of a downward departure. No, I'm asking you, what does that mean? What was the judge referring to? Is it clear that when he's talking in terms of a reduction, what would be the reduction from? I mean, what would be the base that he is thinking about when he's talking about the reduction? Given that, Your Honor, given that the way that he has phrased it is the defense arguing for a reduction, I would correlate that defense's arguments that related to a downward departure based on the Chapter 5 elements that were discussed during sentencing. And so, he's calculating the guidelines, he's saying they've argued for a reduction of the guidelines. However, at the end of the day, on balance, given all these factors, this is what I'm going to think. You know, it seems to me, I don't know if this is a right reading. And obviously, the discussion, it goes over a long period of time with the court on what it's considering and what it's not considering. But it looks to me that the last question that it posed to the government before it really began its sentencing, it's what are you and the court said, I do not believe that a sentence in the range of 570 months meets or anywhere near meets the statutory obligations that I'm to impose here in this plenary resentencing. And so, it seems to me that in the judge's mind, I don't know if this is a fair reading, but I'd like to have your comment. It looks to me the judge is trying to satisfy the government that it can't give the 570 and will not give the 570 when it reconsiders the 3553 factors. And so, in that analysis, it is rejecting the government and explaining this is a new man, he's a different man, and we have new factors, and the judge explained that too. And so, we're getting these statements that he's not going to give the government the 570. But I'm not sure that the judge was focusing as much on what Judge Wilson had imposed, although he does historically relate to that as he's trying to respond to the government. But I may be wrong on that. Judge Harris pointed out a couple of comments that suggested he was somewhat fixated with the 570, and he was, but it looks like he was because the government was pressing that number. Your Honor, I think that's an absolutely correct description and characterization of what happened here. I think the government was pressing for 570. And I think the rationale of the court, I think, is relatively clearly divine from the transcript here and from what he said, that the government was asking for 570. And while he thought he needed to come above the guidelines, he was going to come down from what the government was recommending. And so, and we, again, disagree that there was sort of a myopic focus on the idea of 570 months, but he does refer to it multiple times. And I think he does so because the government is saying this conduct is so serious that you need to be that high. And he's telling the government, and he's explaining, I'm not going to go that high, and I don't think that's necessary, particularly in light of all of these circumstances that I've seen. But the fact that he's also continually referring to the severity of the underlying conduct and the culpability of Mr. Abed indicates that he still feels the need to come above the guideline range. And I think that sort of pretty clearly captures precisely what he's doing here. And that is an adequate explanation under sort of this court's precedence in cases like Nance and Carte. It's clear from the record what the court is doing and why it's doing it. And when we look at the statement of reasons, I think it just confirms that. It emphasizes and makes clear that what he was doing was looking at the severity of the underlying conduct and the culpability of Mr. Abed coming above the guidelines specifically because of that and then deciding not to go as high as the government wants to go and coming down from that 570 months that was the previously imposed sentence because of all the mitigating evidence that had been shown. So he refers to 570 because the government is asking for it and because that was the sentence that Mr. Abed had been serving. So while that wasn't his starting benchmark, it was certainly something that was, I think, relevant to understanding what was happening in this case here. And the government was asking for the same thing and he's explaining, I don't think we need to go up to that anymore. I don't think that's necessary. We're going to come down to a different range. And I think it's clear from the transcript and we've again cited the relevant portions of the JA in our brief. It's clear that he considered all of those things and it's clear why he decided that he needed to arrive on balance at the sentence that he wanted to arrive at. The conduct was so severe and Mr. Abed had to come above the guideline range. However, he didn't need to go as high as the government wanted and he didn't need to go as high as the sentence had been before. So it makes clear that he's coming down from that higher recommendation. Given all of that, Your Honor, we would say that the sentence here is adequately explained and this court should, as a result of that, affirm. Unless there are additional questions related to the procedural reasonableness argument, I would want to move briefly, I think, to the constitutional issues that were raised by the defendant, by Mr. Abed as well. So there are two specific constitutional arguments that he raises, one related to the ex post facto clause and one related to the due process clause. Your Honor, I think that there's no problem under either. Beginning with the ex post facto clause, the relevant question I think is pretty clearly whether he could have received the same sentence when he was originally sentenced and the answer to that is yes. Whether he could have, there could have been an upward departure even without 924C at his original sentencing, just as there was an upward variance here. He's within the maximum penalties that are imposed for those sentences. That did not change. The mere fact that Booker changed from a mandatory to an advisory paradigm doesn't create any sort of ex post facto problem and this course, this court has indicated that before in other cases, uh, excuse me, Your Honor, including, for example, United States versus Carpenter and that's an unpublished case from 2006. With respect to the due process clause argument, there was a reference earlier to this court's decision in Ventura and our position is that, is that that decision effectively forecloses any due process argument here. For there to be a due process problem, Mr. Abed would need to have received a greater aggregate sentence on all of the remaining counts than he received the first time and that's simply not the case here. Uh, he, his original sentence was 570 months and he came down to 360 months. So there's no way for there to be any sort of due process problem there. Uh, Your Honor, if there are no, if there are no additional questions, uh, for me, I would see the remainder of my time. All right. Thank you, Mr. Jones. Thank you, Your Honor. Ms. Lee. Your Honor, it's important for the court to not only pay attention to what Mr. Bansky says, I'm following the law here, I am, um, going to, uh, consider the factors and consider everything I'm supposed to consider, but actually look at what, what happened in this case. Where is the proof? Where is the evidence that he substantively considered the, the request for a lower sentence based on military service and psychiatric evidence? Now, it is, he's, the, everything he says about that service and about, uh, the disability is in Mr. Abed's benefit. He says, counsel has effectively argued it, you know, this is, and it's not lost on me that even while each one of these events was occurring, he was going to the VA and getting committed and he was seeking help. That's not lost on me. So we have extraordinary rehabilitation. We have a hundred percent unrefuted military mitigation evidence. And he says, yes, that's awesome. And then he does nothing with it. Throughout the sentencing, the judge says, I'm taking that into consideration. And, and, and where's the proof of that is my question. Because his statement simply says, I'm taking it into consideration. Okay. Ms. Lee, what was the judge required to do by way of explanation that he didn't do? I understand your argument about how he used the 570 as the base, um, or at least in some parts of the transcript appears to, but what, what was he required to do in terms, in terms of procedural reasonableness in dealing with the sentence other than, excuse me, the service, other than acknowledge it, say that it made it, you know, that he was factoring it in. What else did he have to do? That's an excellent question, your honor. He's required to do two things. One is act reasonably based on that information. And the second thing is to adequately explain why he is rejecting our request for a lower sentence. In fact, we were requesting immediate release based on all of this evidence. 312, the 312 months that we, um, were requesting is eight years above his guidelines. We were requesting, if he wasn't going to give him, uh, if he wasn't going to consider himself limited by the ex post facto clause, we were requesting a sentence eight years above his guidelines and higher than any other person in the case. So it makes no sense for the court to say the words, I'm considering the military service and then do nothing with it, except he imposed the exact same sentence. He would have imposed on a similarly situated person with no military service and no psychiatric mitigation. He basically, you're saying then the error is his failure to explain how he's factoring in the military service and mental health history with regard to the difference between 312 and 360. And actually, and his error is also to impose a sentence that is just too high in light of all the evidence that he has credited. He has credited the evidence. We have not, we have not meaningfully controverted the evidence of the conduct. We have said that the conduct is accounted for in the guidelines calculation. And even after all that, if you think Amar Ahmed was such a, even though he got every, you know, enhancement there was, if you still think that he needs more time, bring it up to 312, but don't go further than that because he had devastating psychiatric mitigation evidence directly relevant to his conduct at the time. He has an unblemished, he has a fantastic record in prison, absolutely unparalleled record in prison. And he served the country. Let me ask you, I'm a little confused here because if you were asking for 312, um, you were asking for a sentence that wasn't a downward departure, but now you're saying you were asking for a downward departure. So could you explain that? I'm a little confused. You know, and this is why, this is why the guidelines are no good, Pamela. That's another conversation for another day. The situation is this, I recognize Mr. Ahmed deserves extra time for what he did. I am saying that the departure should come down off of that. Right. But if the guidelines are up to 235 months and you are effectively conceding that 312 is reasonable, you then maintain you were requesting a downward departure and the judge didn't address it. It's a distinction without a difference, honestly, I guess if I, I could have worded it in terms of do the two, the two, the two, uh, 188 to 235, go down the chart in a way that reflects that the five H factors. So go down three levels or whatever it might be, and then go ahead and add on your extra culpability. And you should come out at no higher than 312. It's a distinction without a difference as to whether you go up first and then come back down or go down with a departure and then come back up because of the severity of the conduct. Either way above 312 was procedurally and substantially unreasonable. Thank you. All right. Thank you. Uh, ordinarily we would come down and Greek council, as you know, and, uh, uh, this is a very important case. Told you, and we do now tell you, I appreciate your arguments and your briefs. So they were well done and, uh, we hope we can shake your hand in the future in person, but, uh, this will have to serve, uh, at this moment in time.
judges: Paul V. Niemeyer, Barbara Milano Keenan, Pamela A. Harris